UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

—————

VINCE CLINE,

                Plaintiff,                    Case No. 2:10-cv-336

v.                                          Honorable R. Allan Edgar

NANCY HULKOFF et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation

Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any

prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a

claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such

relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro*

*se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504

U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state

a claim.

## Discussion

### I.    Factual allegations

Plaintiff Vince Cline presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Marquette Branch Prison, though the actions he complains of occurred while he was housed at the Baraga Maximum Correctional Facility (AMF). He sues AMF Nurses Nancy Hulkoff, Jeannie Stephenson, Marget Comfort, and the unknown Regional Medical Director of the MDOC.

Plaintiff claims that, on June 2, 2010, he was informed by Defendant Comfort that his medication for migraines, Elavil, was being changed to Pamelor. Plaintiff objected, contending that Elavil was working well for him and that he knew nothing about Pamelor. Plaintiff filed a grievance on June 3, 2010. Defendant Hulkoff responded to the grievance at Step I, advising Plaintiff that the Regional Medical Director had recommended that Plaintiff's medication be switched on a trial basis, and Plaintiff was encouraged to kite any problems, as necessary. Between June 11, 2010 and June 25, 2010, Plaintiff filed several kites with health care, stating that the Pamelor was ineffective for his migraines and was causing side effects, including erectile disfunction, urinary difficulties, tingling in his feet and blurred vision. On June 20, 2010, in response to a kite about alleged side effects, an unknown AMF doctor discontinued Plaintiff's prescriptions for Sudafed and Zyrtec because Plaintiff's symptoms were most likely caused by those medications. Plaintiff received additional responses to his kites on June 27, 2010 and June 30, 2010, both of which reiterated that his Palemor would be continued. The responses also indicated that Plaintiff needed to take the Palemor as directed, noting that he had not been taking it, according to medication records. On July 7, 2010, Plaintiff received a response denying his July 6, 2010 medical

kite, in which he requested the Elavil be renewed. Plaintiff filed another kite on July 8, 2010, again complaining that the Pamelor was ineffective and that Elavil was much more effective. Plaintiff was scheduled to see a physician on or before July 12, 2010. When he was not called out for an appointment with health care on July 12, Plaintiff submitted another kite. An appointment was scheduled with the nurse on July 15, 2010, which apparently was not resolved as Plaintiff wished. Following further complaints, another appointment was scheduled for July 25, 2010. Plaintiff makes no allegation that he was not seen by health care on that date. On August 1, 2010, Plaintiff again kited health care, complaining about the side effects of the medication. The response to the kite indicated that the side effects for Elavil and Pamelor were the same. Plaintiff was placed on sick call on August 6, 2010, based on his migraine headache. In response to a kite submitted August 15, 2010, Plaintiff was again placed on the list for sick call. Ultimately, following another medical visit on August 25, 2010, Plaintiff was placed back on Elavil.

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs and conspired to violate the Eighth Amendment. He seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately

indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Here, Plaintiff does not allege that he has been deprived of medical treatment for his migraines. He has alleged only that he has a difference of opinion with Defendant Regional Medical Director about the appropriate medication for his treatment. The Regional Medical Director made a medical determination that a change in Plaintiff's medication regimen should be tried. Plaintiff was monitored during the 80-day trial period for symptoms and side-effects. At the end of the period, based on Plaintiff's lack of satisfactory response and his continuing complaints of side-effects, Plaintiff was returned to his prior prescription. Plaintiff's own allegations and submissions indicate that, far from ignoring Plaintiff's health and safety, Defendants regularly treated and monitored Plaintiff. Although he was not entirely happy with the efficacy of the treatment, he fails to demonstrate that Defendants were deliberately indifferent to his serious medical needs. *Farmer*, 511 U.S. at 834-35; *Rumsey v. Martin*, 28 F. App'x 500, 502 (6th Cir. 2002) (recognizing that a claim that defendants prescribed the wrong medication for a condition does not rise to the level of an Eighth Amendment violation).

Moreover, even had Plaintiff alleged an Eighth Amendment claim against the Regional Medical Director for changing his medication, he fails to allege that Defendants Hulkoff, Stephenson and Comfort engaged in any active unconstitutional conduct for which they may be held liable. Plaintiff's sole allegation against Defendant Comfort is that she informed him of the decision of her superior, the Regional Medical Director, to change Plaintiff's prescription medication. His allegations against Defendants Hulkoff and Stephenson are limited to their decisions to deny his grievances. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Moreover, § 1983 liability may not be imposed simply because an official denied an

administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. For this additional reason, Plaintiff fails to state a claim against Defendants Hulkoff, Stephenson and Comfort.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: _____12/15/2010_____     ___*/s/ R. Allan Edgar*_____
                                    R. Allan Edgar
                                    United States District Judge